UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KIMBERLY Y. NEWPORT., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2010-CV-30095-MAP |
| NEW A.D.E., INC., ROBERT P. MILOS, AND JOHN D. CONFORTI, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## **OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

New A.D.E., Inc., Robert P. Milos, and John D. Conforti[1] (collectively, "New A.D.E.") submit this Opposition to Kimberly Newport's ("Newport") Motion for Summary Judgment. Newport's motion should be denied because Newport has failed to establish the absence of genuine issues of material fact as to any part of the three-part test under the Massachusetts Independent Contractor Law, M.G.L. c. 148B. New A.D.E. properly classified Newport as an independent contractor.

### I.   FACTUAL BACKGROUND

Newport commenced litigation against New A.D.E. on June 7, 2010, alleging she was misclassified as an independent contractor and seeking damages for alleged unpaid overtime and lost benefits. ECF No. 1. The parties conducted discovery and attended mediation. On July 8, 2011, Newport filed a Motion for Summary Judgment as to all the counts in her First Amended Complaint. ECF. No. 18.

   **A. New A.D.E.'s Business.**

New A.D.E. is a wholesale distributor of closeout merchandise, specializing in selling greeting cards at discount prices. See New A.D.E. Interrog. Resp. 12, attached as Ex. A to the

---

[1] Robert P. Milos is the President of New A.D.E. John D. Conforti was its Treasurer.

Declaration of Timothy Holahan ("Holahan Decl")[2].  In addition to greeting cards, New A.D.E. sells a wide array of closeout products, including toys, giftware, gift wrap, and household items. Id.  New A.D.E. does not provide (nor has it ever provided) any information technology ("IT") services to its customers or clients.  Ex. A, New A.D.E.  Interrog. Resp. 13.

**B. Working Relationship with Kimberly Newport.**

Until 2007, New A.D.E. was a fairly small company and was able to operate with fairly limited IT capabilities.  Ex. B, Milos Dep. 20:11–24.  In fact, until 2007, New A.D.E. relied upon its Warehouse Manager, Andrew Leete, to set up the company's computers and printers and, to a limited extent, assist with basic troubleshooting.  Id.  During this time, Mr. Leete's primary job was to work in the warehouse.  Ex. B, Milos Dep. 21:21–22:2.  However, because he had a better knowledge of computers than anyone else at New A.D.E., he agreed to occasionally assist with setting-up the computers and printers.  Id.  By the end of 2006, New A.D.E. had grown considerably, and the company realized that it needed to consult with an individual or entity to set up a larger network and meet its growing technology needs.  Ex. B, Milos Dep. 20:11–24.

In late 2006, Newport submitted a proposal to the company for a consulting arrangement. See Ex. C, Kenniston Dep. 24: 18–22.  Newport also gave New A.D.E. a proposed contract, wherein she would be paid a flat rate for each week she provided services to New A.D.E.  See Ex. D, Newport's Proposal for IT Consulting Services.  Although this agreement was never signed by the parties, New A.D.E. and Newport accepted the terms.  Ex. E, Newport Dep. 7:6–22; Ex. B, Milos Dep. 26:1–15.  Newport began providing IT consulting services for New A.D.E in January 2007 as an independent contractor.  Ex. E, Newport Dep. 7:6–22; Ex. B, Milos Dep. 26:1–15.  Newport continued to provide consulting services to New A.D.E. until April 2010,

---

[2] All exhibits referenced herein are attached to the Holahan Declaration.

50340931v10                                2

when New A.D.E. decided to hire a full-time IT employee, Riju Alex, to meet its growing and rapidly changing IT demands. Ex. E, Newport Dep. 95:10–95:11; Ex. C, Kenniston Dep. 112:22–113:24. The entire time that Newport provided services to New A.D.E., she maintained her own business, her own email address (IT@newports.net), and she served other clients in addition to New A.D.E. Ex. F, Email from K. Newport to R. Milos and S. Kenniston; Ex. E, Newport Dep. 41:11– 41:22; Ex. G, Newport Interrog. Resp. No. 5. In addition, Newport subcontracted some of the work she performed for New A.D.E. to third-parties. Ex. H, Supplemental Interrog. Resp. No. 11; Ex. I, Emails between Newport and Consultants. As explained below, Newport was properly classified as an independent contractor.

## II.     Legal Standards

### A.     Motion for Summary Judgment

Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kuperman v. Wrenn, 645 F.3d 69, at *9 (1st Cir. 2011) The moving party bears the burden of affirmatively establishing both that there are no genuine issues of material fact and that the party is entitled to a judgment as a matter of law. Mendez-Aponte v. Bonilla, 645 F.3d 60, at *7 (1st Cir. 2011). The court must view the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 153 (1st Cir. 2009). "Where the record contains inconsistencies that favor in some lights the defendants and in others the plaintiff . . . the fact finder must be allowed to determine which version of the facts is most compelling." Id. (citations and quotations omitted). In other words, If there are any genuine material facts at issue, the court must deny a motion for summary judgment. Id.

**B.     Newport has the Burden of Demonstrating that there are No Disputed Issues of Material Fact as to Whether Newport was Properly Classified Under M.G.L. c. 149 § 148B**

Count I of Newport's First Amended Complaint pleads a claim under M.G.L. c. 149 § 148B, known as the Massachusetts Independent Contractor Law (the "Independent Contractor Law" or "Law"). See Attorney General ("AG") Advisory 2008/1 at 1(referring to M.G.L. c. 149 § 148B as the "Massachusetts Independent Contractor Law"). The Independent Contractor Law contains a three-part test that an employer must meet to demonstrate that it has properly classified an individual as an independent contractor:

> (1) the individual must be free from control and direction in connection with the performance of the service, both under her contract for the performance of service and in fact; (2) the service must be performed outside the usual course of the business of the employer; and (3) the individual must be customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed. M.G.L. c. 149, s. 148B.

Although the employer must demonstrate compliance with the Independent Contractor Law, Newport, as the party moving for summary judgment, still bears the burden of establishing that there are no genuine issues of material fact when the Independent Contractor Law is applied to the facts here. See Sensing, 575 F.3d at 153. As explained below, Newport has failed to show that there are no genuine issues of material fact as to each prong of the 148B test. Therefore, her Motion should be denied as to Count I of her First Amended Complaint.

Although Newport, in a brief footnote, seeks summary judgment on her other claims, for quantum meruit (Count II), unjust enrichment (Count III), and breach of contract (Count IV), her Memorandum does not contain *any* analysis of these claims. See Mem. in Supp. of Mot. for Summ. J. n.1., ECF No. 19 (summary judgment sought); see generally id. (no analysis). Indeed, Newport's Memorandum does not even state the basic legal elements of those claims, let alone apply those elements to the facts here. See generally id. Such conclusory arguments are insufficient to meet Newport's burden of establishing that there are no genuine issues of

50340931v10                                        4

material fact as to those claims. See Hannon, 645 F.3d at *7 (conclusory arguments will not suffice on summary judgment). Thus, her Motion should be denied in full as to Counts II, III, and IV of her First Amended Complaint.[3]

### III. BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO EACH PRONG OF THE 148B TEST, NEWPORT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

Newport has failed to establish the absence of genuine issues of material fact as to any part of the three-part test under Chapter 148B.

#### A. Newport has failed to establish that there are no genuine issues of material fact as to whether she was "free from control and direction" in performing her services for New A.D.E.

Newport was "free from control and direction" by New A.D.E. In deciding whether a worker is "free from control and direction," the Supreme Judicial Court has concluded that "[i]f in the performance of his work an individual is *at all times* bound to obedience and subject to direction and supervision as to details, he is an employee; but if he only responsible for the accomplishment of an agreed result *in an agreed manner*, he is an independent contractor." Athol Daily News v. Bd. of Review of the Div. of Empl. & Training, 439 Mass. 171, 177 (2003) (emphasis supplied).[4] In determining "direction and control," the Supreme Judicial Court and the Appeals Court have emphasized certain key factors: whether the workers at issue were free to work for other employers; whether they were free to set their own hours; and whether they were free to control the "details and "means and methods" of their work. Id. at

---

[3] New A.D.E. vigorously disputes Newport's claimed damages and will fully contest her claimed damages at trial. For purposes of this motion, New A.D.E. addresses liability only.

[4] Although Athol involved classifying workers under the Workers' Compensation Law (M.G.L. c. 151A § 2), rather than the Independent Contractor Law (M.G.L. c. 149 § 148B), the three-part classification test under the two laws is "almost identical," and courts have thus routinely relied on decisions under the Workers' Compensation Law to interpret the Independent Contractor Law. AG Advisory No. 2008/1 at 2; accord Oliveria v. Advanced Delivery Systems, Inc., 27 Mass. L. Rep. 402, at *11–12 (July 16, 2010) (holding that plaintiff was not entitled to summary judgment as to the "direction and control" prong of the Independent Contractor Law in light of decisions under workers' compensation law); Am. Zurich Ins. V. Dept of Indus. Accidents, 21 Mass. L. Rep. 224, at *10 (Mass. Super. Ct. 2006) ("In analyzing the first prong of the 148B test, involving the employer's right to control and direct its workers, courts look to the common law of workers' compensation as its basis.").

177 ("The essence of the distinction . . . has always been the right to control the *details* of the performance, and the freedom from supervision . . . as to the *means and methods* that are to be utilized in the work."); Comm'r of the Div. of Unemployment Assistance v. Town Taxi of Cape Cod, Inc., 68 Mass. App. Ct. 426, 427-428, 430 (2007); Commonwealth v. Savage, 31 Mass. App. Ct. 714, 718 (Mass. App. Ct. 1991); see also AG Advisory 2008/1 at 3.  The Supreme Judicial Court has emphasized that "[*t*]*he test is not so narrow as to require a worker be entirely free from direction and control from outside forces*." Athol, 439 Mass. at 177–78 (emphasis supplied); accord Savage, 31 Mass. App. Ct. at 718 (emphasis added) (holding that real estate broker was not an independent contractor: "Indicia of employee or independent status need not be 100 percent pure and, ordinarily, are not. Courts have determined that a person is an independent contractor even when subject to minor elements of control."); Nason et. al., Massachusetts Practice:  Workers' Compensation §8.2 at 175 (2003) ("It is not enough that the employer reserve . . . a right to designate the work to be done under the contract.  The employer must have the power to control not just the job to be done, but the person of the employee in every detail of the work.")

In Athol, the court held that a newspaper did not "control and direct" newspaper carriers where, *inter alia*, the carriers were free to expand their delivery routes and take on more customers; to perform services other than newspaper delivery and charge for those services; and to select the method of delivery.  439 Mass. at 178.  In Town Taxi, the court held that taxi drivers were free from direction and control because they were free to choose the timing of their shifts and to work for other employers. 68 Mass. App. Ct. 427–28, 430–2.  In Savage, the court held that a real estate brokerage firm did not direct or control a real estate agent because the agent set her own hours and controlled the means and methods of her work, even though she was required to be in the office on occasion. 31 Mass. App. Ct. at 718–19.

Here, the facts show that Newport was free from New A.D.E.'s "direction and control." Specifically, as fully explained below, Newport was free to—and did—work for other employers; set her own hours; and manage how she performed her job. Thus, summary judgment as to this prong of the 148B test is improper.

### 1.    Newport was free to—and did—work for other clients.

Newport, like the workers in <u>Athol</u>, <u>Town Taxi</u>, and <u>Savage</u>, was free to work for other clients during her employment at New A.D.E.—and *did* work as an IT consultant for other clients during that time. Newport has admitted as much, both in her deposition and her sworn interrogatory responses. Ex. E, Newport Dep. 41:11– 41:22 (in which she admitted that she provided IT services to the South Congregational Church and the Emmanuel ECC Church in Hartford, Connecticut in the two years prior to the August 12, 2011 deposition); Ex. G, Newport Interrog. Resp. No. 5 (in which Newport stated that she was paid for providing IT services to the South Congregational Church in Springfield, Massachusetts in 2007 and 2008); <u>accord</u> Ex. J, Newport's Publicly-Available Linked In Profile, accessed on August 26, 2011, (stating that she has worked as an "IT Consultant" for the "South Congregational Church" from "November 2006" to the present).

Newport does not, and cannot, contest these facts. <u>See generally</u> Mem. in Supp. of Mot. for Summary Judgment; Newport's Statement of Material Facts. Newport's burden on summary judgment is to establish undisputed facts in *her* favor. <u>See</u> <u>Sensing</u>, 575 F.3d at 153. Indeed, New A.D.E. is in possession of numerous emails documenting some of the services she provided to her other clients. <u>See</u> Ex. K (Emails between Newport and other clients). This fact weighs heavily against summary judgment as to this "control and direction" prong. <u>See</u> <u>Sensing</u>, 575 F.3d at 153.

### 2.   Newport was free to set her own hours.

Similarly, Newport was free to set her own hours throughout her employment at New A.D.E.  New A.D.E.'s Regional Sales Manager, Steven Kenniston, and its President, Robert Milos, testified to that fact:

> Q. Was [Newport] expected to be in the office every day?
> A. No.
> Q. Was she in the office every day, more or less?
> A. No.
> Q. Would she let you know if she wasn't coming in or going to be late?
> A. Occasionally.
> Q. Did you want to know if she was going to be in the office?
> A. Unless we had an emergency, no.

Ex. C, Kenniston Dep. 42:6–11, 22–24.

> Q. Did you give [Newport] any hours that you expected her to be there?
> A. No.
> Q. Do you know if anybody did?
> A. I don't.
> [ . . . ]
> Q. So did you expect that she reported that to you, that she wasn't going to be in the office at a point –
> A. I didn't.

Ex. B, Milos Dep. 27:5–28:1; see also Ex. A, New A.D.E. Interrog. Resp. No. 9 ("Plaintiff did not regularly work set hours or a set schedule.").  In addition, Newport sent several emails to New A.D.E. that reflect her flexible schedule.  See Ex. L (Emails from Newport to New A.D.E). Indeed, Newport herself testified only that New A.D.E. "occasionally" told her when she had to work.  See Ex. E, Newport Dep. 17:14–17.  The fact that Newport was free to set her own hours also undermines her contention that she was under the "direction and control" of New A.D.E.

### 3.   Newport was free to determine the means and methods of her work.

Newport also was free to determine the means and methods of her work at New A.D.E. Having the "right to hire helpers" is an indicia of independent contractor status.  Nason, Workers' Compensation §8.2 at 176; see Athol, 439 Mass. at 178 (newspaper carriers were free

"be assisted by anyone in the delivery of the newspapers.") Here, Newport often hired independent consultants to assist her in providing services to New A.D.E. Resp. No. 11 (listing consultants Newport used to assist her in her work at New A.D.E.); Ex I, Emails between Newport and Consultants. Newport paid these consultants directly, and had complete discretion in deciding with whom she would like to work." Ex. H, Supplemental Interrog. Resp. No. 11; Ex I, between Newport and Consultants.

Even aside from her freedom to hire consultants, Newport was otherwise free from direction as to any other "means and methods" of her job. As one New A.D.E. manager, Steve Kenniston, testified:

> Q. Can you tell me what requirements you had for Ms. Newport and what you expected of her, what was communicated to her in January of 2007?
> A. In reference to?
> Q. What she would be doing for New A.D.E.
> A. We asked her to–our concern, our biggest concern was that we needed to have our computer systems up and running at all times, that she needed to handle phone systems, e-mails, faxes, anything to do with communications in and out of the building in any form.
> Q. Anything else.
> A. Not that I can recall.

Ex. C, Kenniston Dep. 32:18–33:9. Robert Milos, who hired Newport, likewise testified:

> Q. See, your testimony was that the only monitoring that you did of Ms. Newport was if the computers were running; is that your testimony?
> A. My testimony would be that I needed to be sure that our computers were running. That was Kimberly's [Ms Newport's] job.
> Q. And how did you do that?
> A. Frankly, if the computer turned on for me or if somebody in the office – as long as there weren't any complaints within the office, that was the only monitoring that I did.
> Q. Tell me the duties that were assigned to Ms. Newport when she was working with New A.D.E.
> MR WHELAN: Objection.
> A. Duties that were assigned were quite simple; again, it was to keep the computers running or all things computer-related or information-related.

Ex. B, Milos Dep. 29:10–30:5.

As New A.D.E. stated in its interrogatory responses, "Plaintiff was free to perform services in the manner she deemed appropriate. Defendants provided no or minimal instruction to Plaintiff regarding how to complete her work. Plaintiff was able to use her own approach to complete her work, and Plaintiff did not regularly work set hours or a set schedule. Defendants did not direct when, where, or how Plaintiff's work was to be done, and Defendants did not control the assistants and/or consultants Plaintiff occasionally brought in to assist her in completing her work." Ex. A, New A.D.E. Interrog. Resp. No 12.

New A.D.E. admits that its managers asked Newport to provide IT services generally—but such general, high-level instruction is expressly permitted under the law. See Athol, 323 Mass. at 177–78 (independent contractor may be held responsible for achieving a result "in an agreed manner," and is not required to be "entirely free from direction and control."). Indeed, allowing for such direction from an employer is necessary, if an independent contractor is to know and understand what is required of her. See Savage, 31 Mass. App. Ct. at 718. Other than such general, high-level instruction, New A.D.E. did not direct or control Newport's "means and methods."

Newport herself admits that "it is true that Ms. Newport may have used her own methodology to maintain the computers and servers." Mem. in. Supp. of Mot. for Summary Judgment at 13. But Newport continues that "she was directed to do so by Mr. Milos and Mr. Kennsiton." Id. Newport misses the point. Chapter 148B does not forbid employers from giving *any* direction to independent contractors. Such an interpretation would effectively end the use of independent contractors in Massachusetts, because an employer would have no way of communicating its goals to a contractor, or of holding a contractor accountable for performing work. See AG Advisory No. 2008/1 at 5 ("The AGO is cognizant that there are important contractors and business-to-business relationships in the Commonwealth. These . . .

50340931v10                                      10

relationships are important to the economic wellbeing of the Commonwealth and . . . will not be adversely impacted by the enforcement of the Law."); Jan-Pro Franchising Int'l, Inc. v. Depianti, 2011 Ga. App. LEXIS 543 (Ga. Ct. App. June 23, 2011) (holding that franchisees are independent contractors of franchisors under 148B: "Because some form of control — by a client or otherwise — is inherent in the performance of every service, such a strict reading of the statute would yield the absurd result that every worker is an employee."). Not only is Newport's interpretation of 148B inconsistent with the statue's text, Attorney General Advisory 2008/1, and the decisions of other states, it also contravenes the binding precedent of Athol, Town Taxi, and Savage, which make clear that Massachusetts law does not forbid instruction of the type provided to Newport by New A.D.E. See Athol, 439 Mass. at 177–78; Town Taxi, 68 Mass. App. Ct. at 427-428, 430–32; Savage, 31 Mass. App. Ct. at 718 (contractor need not be free from all direction or control).

Newport's arguments suffer from at least three other flaws. The first is that Newport either mistakes or misconstrues her voluntary and discretionary actions as *requirements* set forth by New A.D.E. See Athol, 439 Mass. at 178 (relevant test is control by employer). For example, Newport claims that she "reported to the office each day" and "reported to Mr. Milos and Mr. Kenniston when she was going to be late or absent from work." Mem. in Supp. of Mot. for Summ. J. at 3. But Newport does not say that New A.D.E. *required* her to report in that way. See id. To support her assertions, Newport cites to emails attached as Exhibits 6 and 7 to the Garrow Affidavit. Id. Yet none of the cited emails support the inference that New A.D.E. could have—or did—control her schedule in that way. Rather, those emails support the idea that Ms. Newport, *occasionally* and of *her own accord*, notified New A.D.E. of her schedule. If anything, the emails *support New A.D.E's* argument that Ms. Newport had the discretion to set her own hours and the other terms of her engagement. See Exhibit 6 to Garrow Aff., ECF No. 18-6,

Email from Newport to Milos dated February 5, 2007, attached as "Just a reminder that I will not be in the office tomorrow (husband having minor surgery); Email from Newport to Milos dated March 29, 2007 ("I will be away in Toledo").

In addition, although Newport provides the Court with a long list of IT services she provided to New A.D.E., the salient point is that Newport *agreed* to provide those services in her proposal to New A.D.E. in January, 2007.  See Ex. D, Newport's Proposal for IT Consulting Services.[5]  For example, Newport lists the following tasks that New A.D.E. supposedly "required" of her, including:

- Purchasing software with Mr. Milos's approval;

- Purchasing computer equipment with Mr. Milos' approval;[6]

- "Conduct[ing] research," running tests, and reporting the results of the "tests" of these services;

- Finding a facsimile service for the company;

- Performing "routine website maintenance;"

- Maintaining computers;

- Preparing and monitoring emails; and

- Compiling and printing reports.

Mem. in Supp. of Mot. for Summ. J. at 4–6.  *All* of these activities are related to IT services, and all of them fall with the "Statement of Scope" that Newport provided in her proposal. see Ex. D, Newport's Proposal for IT Consulting Services.  It is thus at least a genuine issue of fact whether

---

[5] In her Memorandum, Newport states that she does not have a contract with New A.D.E.  Mem. in Supp. of Mot. for Summ. J. at 15.  Yet the deposition testimony indicates that the parties entered into an agreement with reference to Newport's Proposal.  Kenniston Dep. 24: 18–22; Newport Dep. 7:29 8:7.  The existence of a contract is thus another genuine issue of material fact that precludes summary judgment here.

[6] It is at best debatable that requiring management approval of significant corporate purchases would convert a contractor to an employee under 148B.  It is more likely that such approval is an acceptable degree of control under the control and direction test set forth in Athol.  But in any event, that is an issue for trial, not summary judgment.

New A.D.E. "directed" Newport to provide these services, or whether Newport provided them because she agreed to do so in the proposed consulting agreement.

Finally, many of Newport's factual assertions lack adequate support in the record. For example, Newport states that Mr. Kenniston of New A.D.E. would "direct her work" multiple times each week. See Mem. in Supp. of Mot. for Summ. J. at 4. In support of this allegation, she cites to pages 55, 77, and 110–11 of Mr. Kenniston deposition transcript. Yet none of those pages support Newport's assertions. See Ex. C, Kenniston Dep. 55, 77, 110–11. At most, those pages support the assertion that Newport occasionally *came to Mr. Kenniston* with issues or problems. Id. Newport likewise claims that Mr. Milos "assigned Ms. Newport numerous tasks and duties and directed and controlled Ms. Newport." Mem. in Supp. of Mot. for Summ. J. at 4. But the sentence is uncited. Such conclusory assertions are insufficient to merit summary judgment, and summary judgment should be denied as to this prong.

**B.     Newport has failed to establish that there are no genuine issues of material fact as to whether she performed her services "outside of the usual course of business" of New A.D.E.**

Newport's IT services were outside of New A.D.E's usual course of business. "Case law provides limited guidance in interpreting this fact-specific provision." Chaves v. King Arthur's Lounge, Inc., 2009 Mass. Super. LEXIS 298 (Mass. Super. Ct. July 30, 2009). Generally, however, "if the worker is performing services that are part of an independent, separate, and distinct business from that of the employer, the worker is generally considered to be an independent contractor." Am. Zurich Ins. Co. v. Dep't of Indus. Accidents, 21 Mass. L. Rep. 224, at *12 (Mass. Super. Ct. 2006).

In American Zurich, for example, a home improvement contractor hired workers to provide various services in the course of renovating a home, including painting, carpentry, and siding. Id. at *1–2. Some of the workers were injured on the job. Id. at *2. The court

determined that the workers were not entitled to workers' compensation under Chapter 151A because, *inter alia*, the workers were not in the same "usual course of business" as the home improvement contractor. Id. at *16. The court explained that the home improvement contractor testified that "he did not know how to, nor did he perform" the tasks performed by the workers, including painting, carpentry, and siding. Id. Conversely, the workers "held themselves out as independent businessmen who were specifically trained in these areas and did the work on an independent contractor basis." Id. at *16–17; see also Jan-Pro, 2011 Ga. App. LEXIS 543 at *5–8 (applying Chapter 148B and holding that cleaning franchisee was not in the usual course of business of cleaning franchisor).

Newport, by contrast, relies on cases that are distinguishable because the workers were involved in the core businesses of the employers, rather than a service that is ancillary to the business. In Athol[7] and Rainbow Development v. DIA, the workers were engaged in "the exact business" that the employers were engaged in. 20 Mass. L. Rep. 277 at *10 (Mass. Super. Ct. 2005) (workers who conditioned cars were employees of company that conditioned cars); Athol, 439 Mass. at 178–82 (newspaper delivery carriers were employees of newspaper companies). In fact, since the amendment of the Independent Contractor Law in 2004, the cases favoring the "employee" classification have been dominated by cases involving either delivery companies and/or franchisees, likely because those employers used independent contractors as a part of their core businesses. See Amero v. Townsend Oil Co., 2008 Mass. Super. LEXIS 428 (Mass. Super. Ct. 2008) (oil delivery workers); Fucci v. E. Connection Operating, Inc., 2009 Mass. Super. LEXIS 421 (Mass. Super. Ct. Sept. 21, 2009) (package delivery workers); Oliveria v. Advanced Delivery Systems, Inc., 27 Mass. L. Rep. 402, at *11–12 (July 16, 2010) (furniture delivery

---

[7] Although the Court in Athol held that the workers at issue were independent contractors, it relied on a finding that the workers worked outside of the employer's place of business under Chapter 151A. 439 Mass. at 178–79. Thus, although the Court held that newspaper carriers were engaged in the usual course of business, they were nevertheless independent contractors under the "place of business" exception. Id. The 2004 amendment to the Independent Contractor law removed the place of business exception from Chapter 148B.

services); Pius Awuah v. Coverall N. Am., Inc., 740 F. Supp. 2d 240 (D. Mass. 2010) (franchisees). While the amended Independent Contractor Law is not limited to delivery companies and franchisees, it is also not boundless in scope. In particular, both the Supreme Judicial Court (in the workers' compensation context) and the Attorney General have warned against construing the "usual course of business" prong of the test so that it covers all aspects of an employer's business. AG Advisory 2008/1 at 6 ("In *Athol Daily News*, the Court advised that no prong should be read so broadly as to render the other factors of the test superfluous. 439 Mass. at 180. Thus, prong two should not be construed to include all aspects of a business such that prongs one and three become unnecessary.") Tellingly, Newport has not pointed to a single case in which a court has found that an IT consultant is an employee rather than an independent contractor. This is because IT consulting, unlike delivery work for a delivery company or acting as a franchisee to a franchisor, is not a part of the core business of many companies. Deciding in Newport's favor would greatly expand the scope of the Independent Contractor Law in an unprecedented way to include ancillary services as well as core services. Such an expansion is not supported by the text of the statute or the relevant case law.

Here, Newport provided information technology consulting services to New A.D.E. See Ex. E, Newport Dep. 7:19 –20 (stating that Newport performed IT work for New A.D.E. for three years); Ex. G, Newport Interrog. Resp. No. 6 (listing IT services). New A.D.E. is not in the information technology business. Ex. A, New A.D.E. Interrog. Resp. No. 13. Moreover, New A.D.E.'s management has testified that it has no expertise or even knowledge of the field of IT. Ex. C, Kenniston Dep. 2:10–24; Ex. B, Milos Dep. 21:8–9. Rather, New A.D.E. sells discount greeting cards and other items to customers. Ex. A, New A.D.E. Interrog. Resp. No. 12 ("[New A.D.E. specializes in selling greeting cards at discount prices"). Furthermore, apart from working for her independent business, Newport provided consulting services to other clients at

the same time as she provided services to New A.D.E. Ex. E, Newport Dep. 41:11– 41:22 ; Ex. G, Newport Interrog. Resp. No. 5; Ex. J, Newport's Publicly-Available Linked In Profile. Like the workers in Zurich and Jan-Pro, therefore, Newport "held [herself] out as an independent business[person] who [was] specifically trained" in an area that New A.D.E. was not—IT services. Newport thus operated outside of her employer's usual course of business. Indeed, Newport's business is even more distinct from New A.D.E's business than the workers' businesses' in American Zurich and Jan-Pro were to their employers. See 21 Mass. L. Rep. 224, at *12 (workers were painters and carpenters; employer was home improvement contractor); 2011 Ga. App. LEXIS 543 (workers were cleaning franchisees; employers were cleaning franchisors). And unlike the workers in Athol, Amero, Fucci, Oliveria, and Awuah, Newport was not a franchisee or delivery service company providing a core service of its employer. Simply put, the facts here do not justify the unprecedented expansion of the Independent Contractor Law requested by Newport. Accordingly, whether or not Newport was acting in the usual course of business is at least a disputed issue for trial, and summary judgment should be denied.

    **C.**    **Newport has failed to establish that there are no genuine issues of material fact as to whether she was engaged in an independently established trade, occupation, profession, or business.**

Newport was engaged in an independently-established business during her employment with New A.D.E. An independently established business is one in which the worker "is capable of performing the service to anyone wishing to avail themselves of the services." Athol, 439 Mass. at 181. This part of the three-part test under chapter 148B "seeks to discern whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise." Id. In Athol, for example, the court held that newspaper carriers who could deliver different newspapers at the same time and hire people to assist in delivery

were independent businesses. Id. In Town Taxi, the court held that taxi drivers ran independently-established businesses because they could, and did, perform services other than driving taxis for the defendants. 68 Mass. App. Ct. at 427–28, 430–32; see also Nason, Workers' Compensation §8.2 at 176 ("right to hire helpers" is an indicia of independent contractor status).

Here, like the workers in Town Taxi, Newport could, and did, perform services for other entities while at New A.D.E, including South Congregational Church and the Emmanuel ECC Church. See Ex. E, Newport Dep. 41:11– 41:22 ; Ex. G, Newport Interrog. Resp. No. 5. Furthermore, like the workers in Athol, Newport hired consultants to assist her with her work. Ex. H, Supplemental Interrog. Resp. No. 11; Ex L, Emails between Newport and Consultants. Therefore, like the workers in Athol and Town Taxi, Newport was operating her own, independent enterprise, separate and apart from New A.D.E. See *supra* Section IIIA1. Accordingly, Newport has failed to establish that she is entitled to a judgment as a matter of law as to this prong of 148B, and her motion for summary judgment should be denied.

## CONCLUSION

Because Newport has failed to establish the absence of genuine issues of material fact as to any part of the three-part test under the Massachusetts Independent Contractor Law, M.G.L. c. 148B, Newport's Motion for Summary Judgment should be denied.

        Respectfully submitted,

        NEW A.D.E., INC., ROBERT P. MILOS, and
        JOHN D. CONFORTI,

        By their attorneys,

        /s/ Timothy F. Holahan
        Christina L. Lewis, BBO #666715
        Timothy F. Holahan, BBO #672760
        HINCKLEY, ALLEN & SNYDER LLP
        28 State Street
        Boston, MA 02109
        clewis@haslaw.com
        tholahan@haslaw.com

Dated:  August 26, 2011

## CERTIFICATE OF SERVICE

     I certify that a true copy of this document filed through the ECF system will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 26, 2011.

        /s/ Timothy F. Holahan
        Timothy F. Holahan