UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-30095-RGS

KIMBERLY NEWPORT

v.

NEW A.D.E., INC., ROBERT P. MILOS,
and JOHN D. CONFORTI

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STEARNS, D.J.

Plaintiff Kimberly Newport brought this diversity action in May of 2010 against defendants New A.D.E., Inc., Robert P. Milos, and John D. Conforti (collectively, New A.D.E.),[1] alleging that New A.D.E. wrongly classified Newport as an independent contractor in violation of the Wage and Hours Law, Mass. Gen. Laws. ch. 149, §148B. Newport seeks damages for allegedly unpaid overtime and lost benefits.[2] On June 7, 2010, Newport filed her First Amended Complaint, to which New A.D.E. responded.

---

[1] Mass. Gen. Laws. ch. 149, §148B(d) permits an employee to bring an action against "the president and treasurer of a corporation and any officer or agent having the management of the corporation or entity" as well as the entity itself.

[2] In her complaint, Newport also includes equitable claims for quantum meruit and unjust enrichment, and a claim of breach of contract.

The parties conducted discovery and attended mediation, which was ultimately unsuccessful. On July 8, 2011, Newport filed a motion for summary judgment. The case was then transferred to this session where a hearing on the motion was held on September 30, 2011.

## BACKGROUND

The facts, in the light most favorable to New A.D.E., as the nonmoving party, are as follows. *See LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). New A.D.E., a Massachusetts company, is a wholesale distributor of closeout merchandise. It also has a retail division, The Final Markdown, which sells closeout items directly, primarily discount greeting cards. The principals of New A.D.E., Milos and Conforti, are affiliated with another popular Massachusetts closeout chain, Ocean State Job Lots. Milos is the president of New A.D.E. and Conforti is its treasurer. Steven Kenniston is New A.D.E.'s sales manager.

Before January of 2007, New A.D.E. was a relatively small company that relied on its warehouse manager, Andrew Leete, to keep its computers and printers in working order. Although Leete was not designated as an information technology (IT) specialist, he had sufficient computer knowledge to satisfy New A.D.E.'s needs. When Leete left the company in late 2006, Milos decided to hire a professional IT consultant.

Milos met Newport through Kenniston's wife, with whom Newport had worked

at a prior job.[3] After introducing herself to Milos as an IT consultant, she was asked to draft a proposal outlining the work that she could perform for New A.D.E. and her expected compensation package.[4] *See* Ex. No. 4 (Dkt # 18). Newport's finished proposal listed a number of general IT consulting services including:

- systems/needs analysis and recommendations
- project planning, prioritization, and implementation
- locate and negotiate external resources
- regularly report on status of projects
- PC and software maintenance and troubleshooting

She also outlined with more specificity her areas of expertise, which included a broad range of knowledge about specific software and hardware, as well as media design and communications. Newport set her "consulting fee" at $1,250 per week with a "guaranteed minimum of 20 hours/week for phone calls, e-mails, onsite and offsite support, not including commuting time. Any partial weeks will be billed at a rate of $180/day." "Excess hours" beyond a standard 40 hour work week, she requested be billed "separately at $60/hour."[5] Newport suggested a payment schedule for her fees,

---

[3] Newport worked at a law firm as an "assistant management information systems (MIS) manager." *See* Ex. No. 2 (Dkt #25).

[4] In her proposal, Newport described herself as an "Independent Computer Specialist."

[5] At the hearing, New A.D.E. stated that Newport had never sent any bills for "excess" hours to the company, but received payment on a weekly basis.

3

a plan for reimbursing any necessary travel, and the terms under which New A.D.E. could terminate the relationship. Finally, Newport included a paragraph entitled "Third-Tier Technical Support" addressing any IT issues that she herself could not handle. She identified third-party vendors who would fill any gap and bill New A.D.E. directly.[6] The proposal was not signed,[7] but Milos hired Newport in January of 2007, agreeing to the terms that she had laid out.

After Newport was hired, she was given an office with a desk, computer, and other accouterments for use on days when she was working at New A.D.E.[8] Newport's office was adjacent to Kenniston's and near Milos's. Newport set her own hours, and often worked from home. She was not required to be at New A.D.E. during the working day, unless computer problems arose that necessitated her presence. When

---

[6] Her proposal stated that she had negotiated a lower rate with the vendors for New A.D.E., in one case saving 31.6% of the normal rate.

[7] No contract between New A.D.E. and Newport was ever signed.

[8] Newport also had a New A.D.E. email address, which she used in her New A.D.E. correspondence, as well as correspondence with third parties and the contractors with whom she worked to provide services to New A.D.E. *See* Ex. I (Dkt #25). Newport's New A.D.E. email signature line read, "Kimberly Y. Newport, IT Consultant, New A.D.E., Inc." and gave New A.D.E.'s address, phone number, and website address as her own. *See id.* According to Newport's counsel at the hearing, Newport did not create a legal entity for herself (such as a subchapter S corporation), but worked instead in her individual capacity and "held herself out" as part of New A.D.E.

working from home she used her own computer. On occasion, when she did not report to the New A.D.E. office, she would email Milos and Kenniston to inform them of her whereabouts. New A.D.E. contends that to the extent Newport "reported" her absences, she did so of her own volition.

The work that Newport performed for New A.D.E. between January of 2007 and April of 2010 (when she was terminated), fell, for the most part, within the scope outlined in her proposal. Her main responsibility was to "keep the computers running," but her duties eventually encompassed management of all of New A.D.E.'s electronic communications.[9] In this latter role, Newport selected new computer equipment, hired a facsimile service, chose a web host, performed website maintenance upgrades, researched an electronic system for gift card distribution, drafted and published email coupons and promotions, and compiled printed reports involving inventory, sales, and cumulative bookings. She also responded to customer complaints and comments, and monitored company emails, including a separate email address established for vendor emails and inquiries. Newport also occasionally submitted to Milos and other

---

[9] When asked what duties were assigned to Newport, Milos responded that her duties were "to keep the computers running or all things computer-related or information-related." *See* Milos Dep. 29:10-30:5, Ex. B (Dkt #25). Kenniston explained, "We asked her to – our concern, our biggest concern was that we needed to have our computer systems up and running at all times, that she needed to handle phone systems, emails, faxes, anything to do with communications in and out of the building in any form." *See* Kenniston Dep 32:18-33:9, Ex. C (Dkt #25).

5

employees artistic suggestions regarding email greeting card promotions. She helped to prepare for, and attended, several trade shows on behalf of New A.D.E., and worked with Milos at those shows. In order to carry out her technical duties fully, Newport sub-contracted with five different companies or individuals. *See* Newport Supp. Interrog. Resp. No. 11, Ex. H (Dkt #25).

During Newport's tenure with New A.D.E., she generally logged hours equivalent to a full forty-hour work-week.[10] During this three-year engagement, she occasionally did outside consulting. She performed website maintenance, at an hourly fee of $50, for the South Congregational Church in Springfield, Massachusetts, and the Emmanuel EC Church in Hartford, Connecticut, as well as two hours of personal computing work for a local couple.[11] According to her 2007 W-2 Form, Newport earned $59,280 in nonemployee compensation, most of it presumably from New A.D.E. *See* Ex. No. 5 (Dkt #18). No other tax documents are part of the record.

Sometime shortly before January of 2010, Milos determined that New A.D.E.

---

[10] Newport has produced computer log-in records to verify the time that she spent working for New A.D.E.

[11] New A.D.E. alleges that Newport may have worked during this time period for at least one other person or entity. *See* Defs.' Surreply at *3. At the hearing, Newport's counsel stated that some of the work she performed for others was in the nature of unpaid accommodations to friends and relatives.

was outgrowing Newport's level of IT expertise.[12] Kenniston hired Riju Alex as a full-time IT employee of New A.D.E. in January of 2010. Alex eventually took over all of Newport's IT functions and she was terminated.[13]

DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In this context, 'genuine' means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rodriguez-Pinto v. Tirado-Delgado*, 982 F.2d 34, 38 (1st Cir. 1993). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." *Id.*

Mass. Gen. Laws. ch. 149, §150, authorizes a person to bring a private civil

---

[12] At the hearing, New A.D.E.'s counsel contended that shortly before Newport was terminated, a discussion about Newport becoming a full employee for purposes of pay and benefits occurred; but Newport declined the offer. Newport's counsel disputes that any such offer was made.

[13] Newport left New A.D.E. in April of 2010. *See* Defs.' Interrog. Resp. Ex. A; Pl.'s Dep. at 95, Ex. No. E (Dkt #25).

7

action against an employer who has improperly classified him or her as an independent contractor.[14] Mass. Gen. Laws ch. 149, §148B, which defines persons who are excepted from employee status, was substantially amended in 2004 by an Act known as the Independent Contractor Law. The amended law "creates a presumption that a work arrangement is an employer-employee relationship unless the party receiving the services can establish that three factors are present. First, the worker must be free from the presumed employer's control and direction in performing the service, both under a contract and in fact.[15] Second, the service provided by the worker must be outside the employer's usual course of business.[16] And, third, the worker must be customarily

---

[14] A wrongly classified employee may recover treble damages, attorneys' fees and costs. *See* Mass. Gen. Laws. ch. 149, §150. Damages include overtime and benefits that are statutorily mandated. *See Somers v. Converged Access, Inc.*, 454 Mass. 582, 589 (2009) ("Individuals who provide services to an employer as an employee (rather than as an independent contractor) fall within the protection of the wage act and G.L. c. 151, §1A (overtime). The wage act requires employers timely to 'pay weekly or bi-weekly each such employee the wages earned by him.' G.L. c. 149, §148.").

[15] A job description indicating that an individual is free from an employer's direction and control is insufficient, standing alone, to satisfy the first prong of the statute. *See* 2004 Mass. Act. ch. 193, *Advisory from the Att'y Gen.,* at * 4. An individual must be factually free from a supervisor's direction and control, operating with "independence and autonomy." *See Id.* The Advisory describes an individual who satisfies this requirement as one who "completes the job using his or her own approach without instruction and also dictates the hours that he or she will work on the job." *Id*.

[16] The 2004 amendments to Mass. Gen. Laws. ch. 149, §148 make it more difficult for an employer to meet the second prong. However, the Advisory from the

engaged in an independent trade, occupation, profession, or business of the same type."[17] *See Advisory from the Att'y Gen.*, quoting Mass. Gen. Laws. ch. 149, §148B;[18] *Awuah v. Coverall N. Am., Inc.,* 707 F. Supp. 2d 80, 82 (D. Mass. 2010) ("The burden is on [the employer] to establish these three elements, and it must establish each element.").[19]

The subjective belief of either party as to whether the worker was hired as an

---

Attorney General states that "prong two should not be construed to include all aspects of a business such that prongs one and three become unnecessary." *Id*. at 12

[17] Under the third prong, the court "is to consider whether the service in question could be viewed as an independent trade or business because the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services." *Coverall N. Am., Inc. v. Comm'r of Div. of Unemp't Assistance*, 447 Mass. 852, 857-858 (2006), citing *Athol Daily News v. Bd. of Review of the Div. of Emp't and Training*, 439 Mass. 171, 181 (2003). Ultimately, the question is "whether the worker is wearing the hat of an employee of the employing company or is wearing the hat of his own independent enterprise." *Coverall,* 447 Mass. at 858-859, citing *Boston Bicycle Couriers, Inc. v. Deputy Dir. of the Div. of Emp't. & Training*, 56 Mass. App. Ct. 473, 480 (2002).

[18] "Insofar as the Attorney General's office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions." *See Smith v. Winter Place, LLC*, 447 Mass. 363, 367-368 (2006).

[19] The Advisory from the Attorney General makes clear that the "rigid, three-part test is unlike the well-established IRS, FLSA, National Labor Relations Act (NLRA), and state law tests, which have flexible criteria that must be weighed according to the circumstances of the work arrangement." *Id.*

employee or independent contractor is not relevant to the determination as to whether the person was or was not misclassified. *See Somers*, 454 Mass. at 590 ("Unless [the company] were to prove at trial the three criteria required to establish that the plaintiff was an independent contractor under G.L. c. 149, § 148B, the plaintiff, as a matter of law, was an employee [ ] even if he was not hired as an employee. . . . None of the statutory criteria speaks of the employer's intent; rather, all speak of the nature of the service provided.").

Here, to prevail on her motion for summary judgment, Newport must show only that no material factual dispute exists as to at least one of these three factors. However, on the present record, the court cannot state with certainty that such is the case. As illustrated by the vigorous arguments made by able counsel at the hearing before this court, almost every essential fact is disputed in one degree or another, particularly those that go to the employer's showing on the second prong of the test. Consequently, the court will deny Newport's motion for summary judgment and instruct the Clerk to set the case for trial to permit the development of a full record of the case.

ORDER

For the foregoing reasons, the plaintiff's motion for summary judgment is

DENIED.[20] The Clerk will set the case for trial without jury on Wednesday, December 7, 2011, to continue day-to-day thereafter until completed. For convenience of the witnesses and counsel the trial will be held at the United States Courthouse for the Western Division in Springfield, MA.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[20] New A.D.E. is correct that Newport failed to brief her summary judgment argument with respect to Counts II, III, and IV. Nevertheless, her quantum meruit and unjust enrichment claims are claims of equity that are only relevant as an alternative to a remedy provided at law. *See Massachusetts v. Pace,* 616 F. Supp. 815, 822 (D. Mass.1985). Regarding her claim for breach of contract, Newport has failed to allege any specifics.